### MILBANK v. AMERICAN SURETY CO. OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

1. MUTUAL INSURANCE COMPANY—DIRECTORS—CONTROL OVER SECURITY FUND.
   The directors of a mutual benefit association have no authority to pay its
   special security funds to a surety company as collateral security against lia-
   bility as surety on a bond given by the president of the association on appeal
   from a judgment against him for costs of a suit for malfeasance.

2. SAME—AGREEMENT TO SATISFY JUDGMENT AGAINST OFFICER.
   The fact that a mutual benefit association remained solvent for more than
   two years after the rendition of a judgment against its president for costs
   of a suit for malfeasance, and after a subsequent settlement with him of a
   separate suit by him against it, without trying to recover its special security
   funds deposited with a corporation which had become surety on the presi-
   dent's appeal bond, does not raise an inference that such settlement included
   a promise by it to apply such funds to satisfy the judgment, if during such
   time the president took no steps to procure its satisfaction.

Appeal from special term, New York county.

Action by Samuel W. Milbank, as receiver of the Mutual Benefit
Life Association of America, against the American Surety Company
of New York and others. There was a judgment in favor of plain-
tiff, and defendants appeal. Affirmed.

The action is brought by the receiver of an insolvent mutual assessment in-
surance association to require the American Surety Company to account for and
pay over the sum of $2,500 as a part of the security fund of the insolvent associa-
tion deposited with it on June 9, 1890. From the date of the incorporation of this
association, in 1882, until 1890, the defendant Edward Henry Kent was its presi-
dent. An action was begun against Kent, in the name of the people, for the
purpose of having him removed from the presidency of the association for mal-
feasance in office. This resulted in a judgment removing him, and for costs
against him, amounting to over $2,000. Upon appeal this judgment was affirmed
at the general term. Upon that appeal the surety company was surety on Kent's
undertaking, and, as collateral security therefor, it obtained the deposit of the
$2,500, which was given pursuant to a resolution that that sum be drawn from
the "security fund" of the association. The check so drawn, and signed by Kent
as president, upon its face showed that it was from the "security fund"; and the
proceeds of such check, until the entry of judgment, were held by the surety com-
pany; and it is for the recovery of this money with its accumulations that this
suit was brought. In 1890 the attorney general, and in 1891 the counsel for the
association, served upon the surety company a notice, stating that the money so
deposited belonged to and was part of the funds of the association, and "that the
taking of said sum by Kent, and the deposit with you, were in violation of law."
When this suit was brought against the surety company, it alleged in its answer
that the defendants Kent asserted some claim to the funds; and subsequently,
upon the receiver's application for leave to sue the surety company, the defend-

ants Kent asked and were allowed to come in and defend. Mary C. Kent did not answer. The answer of Louisa Kent need not be considered, because immaterial; the real issue being the one presented by the answer of Edward H. Kent, in which he alleges that, in a suit brought against the Mutual Benefit Life Association to recover moneys alleged to be due him, a settlement was made between the parties before trial, which covered the claims of each against the other, and included an obligation on the part of the association to obtain the satisfaction of the judgments in the people's suit.

Argued before WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Wm. A. Copp, for appellants.
Henry W. Sackett, for respondent.

O'BRIEN, J.   Whether we regard the $2,500 given to the surety company as moneys diverted from a special fund, contrary to the by-laws of the association, or merely as a portion of its general funds set aside for specified purposes, which it was within the power of the officers to withdraw, and apply for the general purposes of the association, we are brought to the same conclusion, that the payment of the money to the surety company, as collateral security upon a judgment for costs accruing in an action against Kent for malfeasance in office as president, was unauthorized and illegal. The association is therefore entitled to recover back the amount, in either view; and such right could only be defeated by a showing that the officers and directors of the association having the legal right and control over the fund entered into a valid agreement to transfer such right to all or some one of the defendants.  In view of the conclusion at which we have arrived as to the existence of such an agreement, we deem it unnecessary to determine whether or not the officers and directors of the association had power or authority to enter into any agreement in reference to the moneys which had been set aside in the special or security fund.  The burden of proving such an agreement was upon the defendant Kent, and we think the preponderance warrants the conclusion of the learned trial judge, that it was not sustained.

In the preliminary negotiations looking towards a settlement of the suits brought by the Kents and Mackey against the association, the subject of the satisfaction of the people's judgment as one of the terms of such settlement was discussed. But the contention that it was included in the final terms of settlement is disproved, not only by all the resolutions of the board of directors of the association, but by the written stipulations, and, in fact, by all the writings that appear in this record, except a single preliminary letter written by Mr. Loew to Mr. Kent's attorney, in which, in outlining the terms of settlement, he, among other things, says that the satisfaction of the judgments is to be included.  It is shown, however, that, while this attorney endeavored to persuade the counsel for the association to get the judgments satisfied, the latter never assented or agreed to any such proposition; his final reply thereto being that "anything that I can honorably do to help you in that matter I will do it for you, but, of course, that does

not enter into the consideration of a settlement here." That the attorney for Mr. Kent substantially agrees in this version of the conversation is shown by his original examination, in which he said: "I always insisted with Mr. Lovatt that that judgment ought to be satisfied, that Mr. Loew wanted it, and that Mr. Kent wanted it. Mr. Lovatt always told me he would do everything in his power to get the judgment satisfied. He would not make any further or more positive promise than that." It is true that Mr. Lovatt's assistant, Mr. Ely, who conducted part of the negotiations during the former's absence from the city, does testify that the satisfaction of the judgment was one of the conditions of the settlement. But his testimony is not only opposed to that of the other witnesses, but, as stated, finds no support in the terms of settlement as they were reduced to writing, or in the correspondence which passed between the parties. And the most significant fact militating against the testimony of Mr. Ely is his letter accompanying the stipulation of settlement, which he says contains "the agreements in relation to the settlement as Mr. Lovatt explained them to me." We do not find, either in the stipulation or in the correspondence from beginning to end, that the satisfaction of the people's judgment was made a part of the settlement.

As to Mr. Loew's letter, which was addressed to Kent's attorney, that cannot be given much weight, because the contents were never communicated to the association, nor was Mr. Loew in any way a party to the suit. We think it further evident that the resolutions of the association, which set out at some length the questions in dispute between Mackey and Kent and the association, contain no authority to include, as a part or condition of the settlement, an obligation on the part of the association to procure the satisfaction of the judgments against Kent. There is therefore an entire absence of proof that any agreement was authorized by the directors other than the one that was made in writing. The terms of settlement so reduced to writing, and consummated by instruments under seal in the form of releases, were the only ones directly authorized by the association.

It is urged, however, from the fact that the association remained for more than two years solvent, and during that period took no steps to recover the money, that it follows we are to infer that the agreement contemplated that the money was to be applied in satisfaction of the judgments. The force of such an argument is destroyed when we consider that not only the association, but Kent himself, remained passive. In view of the injury which Kent considered these judgments inflicted by being allowed to stand, he had a strong motive to activity and diligence in compelling the association to procure a satisfaction of the judgments, if it had so agreed. It appears that these became liens on property which his wife had sold, upon which sale an amount sufficient to satisfy the judgments had been retained by the purchaser. This was an additional reason why Kent should have taken steps towards securing from the association the fulfillment of its alleged agreement without delay. The association had no control over these

judgments, and it never could have procured their release except by paying the money to the surety company, or by satisfying the latter that the association had the legal right to authorize the application of the sum in the surety company's hands to such purpose. The latter suggestion would necessarily be an embarrassing one to the association, in view of the letter it had written to the surety company, and the attitude in which the latter was placed, not alone by that letter, but by a notice received by it from the attorney general, as to the legality of the action of the association in delivering the money.

It would serve no useful purpose to discuss in detail all the evidence bearing upon this question of fact, because, as said, outside of Mr. Loew's letter and the mention of the subject in the preliminary conversations between counsel, the record is replete with confirmatory data which enforce the only conclusion derivable from the resolutions of the board and from the written documents evidencing the agreement. We are therefore irresistibly led to the conclusion reached by the learned judge at special term, that the association never authorized either its officers or counsel to obligate itself to Mr. Kent to procure a satisfaction of the judgments as a condition of settlement.

Apart from the merits, the appellants complain of certain rulings made by the trial judge excluding evidence. This testimony, which such excluded questions were intended to elicit, was subsequently given; and a reading of the record shows that all the conversations and correspondence leading up to the final agreement, which was reduced to writing, were given in full, and thus all the evidence that was competent and material as to the details of the settlement was fully disclosed.

We think the judgment is right, and that it should be affirmed, with costs. All concur.